Filed 12/15/15  P. v. Fantuzzi CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALEXIS A. FANTAUZZI,<br><br>    Defendant and Appellant. | B258992<br><br>(Los Angeles County<br>Super. Ct. No. SA081047)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br><br>**[CHANGE IN JUDGMENT]** |

THE COURT:

It is ordered that the opinion filed herein on November 23, 2015, be modified as follows:

Page 1:  First paragraph, second line, the disposition statement is modified to read as follows:

Reversed in part, affirmed in part as modified, and remanded.

Page 19:  Delete the Disposition as it currently reads and substitute the following:

The enhancements for the prior strike conviction from the state of Washington are reversed.  The judgment is modified to vacate defendant's conviction in count 1 for simple kidnapping.  The matter is remanded for resentencing.  In all other respects the judgment is affirmed.

This modification effects a change in judgment.

Appellant's Petition for Rehearing is denied.

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEXIS A. FANTAUZZI,<br><br>    Defendant and Appellant. | B258992<br><br>(Los Angeles County<br>Super. Ct. No. SA081047) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie E. Brown, Judge.  Reversed in part and affirmed in part as modified.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephanie A. Miyoshi and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury found defendant Alexis Agustin Fantauzzi guilty of kidnapping as a lesser included offense of kidnapping to commit rape (Pen. Code, § 207)[1] (count 1); kidnapping during a carjacking (§ 209.5, subd. (a)) (count 2); misdemeanor child molesting (§ 647.6, subd. (a)(1)) (count 3); misdemeanor escape from arrest (§ 836.6, subd. (b)) (count 4); and vandalism over $400 (§ 594, subd. (a)) (count 5). Defendant admitted having suffered a 2010 conviction in the state of Washington for the crime of robbery in the second degree, and the trial court found this to be a strike conviction.

The trial court sentenced defendant to life with the possibility of parole in count 2, with a minimum parole eligibility term of 14 years due to the strike conviction. The court imposed a consecutive determinate sentence of three years in count 5, doubled to six years because of the prior strike conviction, and consecutive sentences of one year for each of counts 3 and 4. The court also imposed a consecutive five-year term under section 667, subdivision (a)(1) for the prior conviction. The high-term sentence of eight years in count 1 was stayed pursuant to section 654. Defendant's total sentence was a determinate term of 13 years with a consecutive life term.

Defendant appeals on the grounds that: (1) his conviction in count 1 must be vacated because kidnapping is a necessarily included offense to count 2; (2) the trial court prejudicially erred in failing to instruct on the lesser included offense of simple kidnapping in count 2; (3) there is no substantial evidence that defendant's prior conviction in Washington was a serious felony; and (4) the misdemeanor sentence in count 4 must be stayed under section 654.

## FACTS

In June 2012, B.[2] was finishing her senior year in high school. While driving to a final examination, she stopped at the red light at Webb Way and Pacific Coast Highway (PCH). As she waited, a man, later identified as defendant, opened the passenger door of

---

[1]     All further references to statutes are to the Penal Code unless stated otherwise.

[2]     At the time of trial, B. was using a different name.

2

her vehicle, pushed her belongings from the passenger seat, and entered the vehicle. B. asked defendant to get out of her car, but he did not desist. He unplugged B.'s phone from the charger, undid her seat belt, grabbed her arm and shoulder, and dragged her toward him. He then pushed her over the center console and into the back of the car. B. froze because she did not know what to do. Defendant got into the driver's seat and put his hand on B. as she lay on the back seat, angrily telling her to stay down. Defendant turned right onto PCH.

B. attempted to see out of the windows although her head was down. Defendant drove a substantial distance toward Santa Monica and then turned the car around and headed back toward Malibu. He told B. to get in the front seat and to put the seat in the reclined position. When B. did not immediately respond, defendant became angry. B. then got into the passenger seat and pushed the button to lower it. Defendant became angry because the seat moved slowly, and B. was frightened.

Defendant asked B. personal questions, such as her name, age, birthday, and address, and she gave him mostly untruthful responses. He asked when people would notice she was gone and if she knew of any hotels or secluded areas. B. was shaking and crying. Defendant asked how to get to the freeway and said he was going to take her to Canada or Mexico. Defendant placed his hand on B.'s thigh and held it there. He also rubbed up and down her thigh and moved further up her leg and asked her if she was really 17. He rubbed her vagina over her clothing. Defendant continually made U-turns and pulled off the highway to the side of the road. At one of these stops, he squeezed her breast and vagina with his hand. At one point, defendant covered B.'s face with a blanket he found in the car.

After defendant had driven around for an hour or more, the car needed gas. Defendant pulled into a gas station and got out of the car. He angrily told B. to stay down. When defendant entered the gas station building, B. peeked over the top of the back window and tried to get the attention of one of the attendants. When a man looked at her, B. mouthed "help me." The man beckoned to other people and pointed at her car. When defendant came out and began pumping gas, one man asked to see defendant's

3

driver's license. Defendant refused, and the man told defendant he was calling the police, and he knew the license plate number. B. did not think she would be safe if she tried to get out of the car because she would not have time to unbuckle her seat belt and unlock the door.

Siros Azimi was the manager of the gas station where defendant stopped. He identified surveillance video filmed at the time of the incident. His attention was drawn to B.'s car, and he read her lips saying, "Help." She looked scared and was crying. Azimi saw defendant get back in the car and drive off. Azimi called 911 and gave the license plate number. Michael Miller was at the gas station and noticed that B. was crying and in obvious distress. He then saw that she was pleading, "Please, please help me." As defendant was pumping gas, Miller asked him what was going on. Defendant got in the car and Miller stood in front of the car and said, "I don't know what's going on. . . . But you may as well just let her leave now." Other people were gathering around the car. Defendant put the car in reverse and backed out.

Defendant drove along PCH and then turned onto Kanan Dume Road. He pulled off the road and parked the car behind some plants and waited. He told B. they were being followed. He then continued up the road and stopped in a turnout where there were trash cans. He took B.'s phone and GPS unit, put them in a trash can, and put trash on top of them. A man who had been at the gas station was on his way to the freeway when he saw B.'s SUV on Kanan Dume Road. He realized it was the same vehicle that had been at the center of the encounter at the gas station. He called 911 and then followed the vehicle to the turnout. At that point, sheriff's deputies pulled up. The deputies arrested defendant.

B.'s ordeal lasted four or five hours. She testified that during that time, defendant said he was there to protect her and that he was saving her from people following her and trying to kidnap her. He told her that fate had brought them together. He said he was sending people to her house to protect her family. He told B. he wanted to go to Canada so they could be together.

4

As defendant was being transported to the sheriff's station by Deputy Jill Greenwood, he took off his seat belt and began moving around. Upon reaching the station, defendant lay across the back seat and began kicking out the window on the right side of the car. He succeeded in pushing the frame away from the body of the car.

At approximately 10:00 p.m., Deputy Matthew Lewis transported defendant from the sheriff's station to the jail in downtown Los Angeles. While Deputy Lewis and another deputy, Deputy Durfee, proceeded along the freeway, defendant lay down in the rear seat and began kicking the rear passenger window. Defendant ignored orders to stop. He bent the frame and kicked the window out. Deputy Lewis turned on the overhead lights and proceeded to move from the No. 1 lane to the shoulder through heavy traffic. Defendant lunged headfirst toward the opening he had made in the window. As defendant leaned out the window, Deputy Durfee was able to grab defendant's handcuffs and hold him inside the car. Deputy Lewis parked on the shoulder and pushed defendant back inside.

**Defense Evidence**

Defendant presented no evidence in his behalf.

### DISCUSSION

## I. Count 1 Conviction as a Lesser Included Offense of Count 2

### A. Argument

Defendant contends that the conviction of simple kidnapping in count 1 is a necessarily lesser included offense of his conviction for kidnapping during the commission of a carjacking in count 2. Therefore, the conviction in count 1 must be vacated, since multiple convictions may not be based on necessarily lesser included offenses. Respondent agrees.

### B. Relevant Authority

"'[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.'" (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.) A defendant may not be convicted of both an offense and a lesser included offense. (*Ibid.*; see also *People v. Anderson* (2009) 47 Cal.4th 92, 103-

5

104.) For purposes of avoiding improper multiple convictions, only the statutory elements test is to be used in determining whether an offense is necessarily included in another. (*Reed*, at p. 1229.)

### C. Conviction Must Be Vacated

Defendant was convicted in count 2 of violating section 209.5, subdivision (a), which prescribes punishment for "[a]ny person who, during the commission of a carjacking and in order to facilitate the commission of the carjacking, kidnaps another person who is not a principal in the commission of the carjacking . . . ." In count 1, defendant was convicted of simple kidnapping in violation of section 207, which provides: "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into . . . another part of the same county, is guilty of kidnapping."

Clearly, simple kidnapping is a necessarily included offense of count 2, since kidnapping is one of the elements of section 209.5. Therefore, the conviction in count 1 must be vacated.

## II. Lack of Instruction on Simple Kidnapping in Count 2

### A. Argument

Defendant contends that, had the jury been instructed on simple kidnapping in count 2, it could readily have determined there was insufficient evidence to conclude the kidnapping was intended to facilitate the carjacking and reasonably found him not guilty of count 2. Defendant maintains there was considerable ambiguity as to whether he intended the kidnapping as a means to facilitate the carjacking or whether his target offense was the kidnapping of B. with the carjacking being merely incidental to that objective. According to defendant, his conviction in count 2 should be reversed and remanded for a new trial.

### B. Relevant Authority

"[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support."

6

(*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*).) "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury." (*Ibid.*) "'Substantial evidence' in this context is '"evidence from which a jury composed of reasonable [persons] could . . . conclude[]"' that the lesser offense, but not the greater, was committed." (*Ibid.*; *People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.)

An appellate court "appl[ies] the independent or de novo standard of review to the failure by the trial court to instruct on an assertedly lesser included offense." (*People v. Cole* (2004) 33 Cal.4th 1158, 1218.) If the trial court fails in its duty to instruct on a lesser included offense supported by the evidence, the error is at most one of state law alone. (*Breverman*, *supra*, 19 Cal.4th at p. 165.) It does not require reversal unless "an examination of the entire record establishes a reasonable probability that the error affected the outcome." (*Id.* at pp. 165, 178.)

### C. *Instruction Not Required; Harmless Error*

We disagree with defendant and conclude the trial court had no sua sponte duty to instruct on simple kidnapping as a lesser included offense in count 2. As noted, section 209.5, subdivision (a), provides: "Any person who, during the commission of a carjacking and in order to facilitate the commission of the carjacking, kidnaps another person who is not a principal in the commission of the carjacking shall be punished by . . . ." With respect to count 2, defendant's jury was instructed that the People were required to prove that the defendant committed a carjacking, that during the carjacking he held another person by using force or by instilling reasonable fear, that he moved the other person a substantial distance, and that he moved the person *with the intent to facilitate the carjacking or to help himself escape or to prevent the other person from sounding an alarm*.[3] (CALCRIM No. 1204.) (Italics added.) The jury was also

---

[3]     The instruction also listed the following elements: that the person moved must not be one of the carjackers, that the person must not have consented to the movement, and

7

instructed that carjacking and false imprisonment were lesser crimes of kidnapping during a carjacking as charged in count 2. (CALCRIM No. 1204.)

The evidence showed that defendant entered the victim's vehicle and immediately took control of it. He grabbed B. by the arm, pulled her out of the driver's seat, and pushed her into the back seat. He held her down and continued to drive the car for an extended period of time, during which he asked her how to get to the freeway and indicated he wanted to drive to Mexico or Canada. Although simple kidnapping is a lesser included offense to the charge of kidnapping for carjacking (*People v. Medina* (2007) 41 Cal.4th 685, 700), defendant clearly desired to, and did, commit a completed carjacking, and he took B. along with him, at least initially, to facilitate that carjacking. (See *People v. Lopez* (2003) 31 Cal.4th 1051, 1062 [carjacking is complete when the perpetrator drives off with the carjacking victim in the car].) Kidnapping B. was much easier than attempting to push B. out of the car. Defendant did not appear to have a weapon, which would require him to use force and struggle with B. This would have taken time, attracted attention, and quite possibly caused an accident. The kidnapping allowed defendant to make a fast getaway from the intersection. It also prevented B. from sounding the alarm.

That defendant later showed a prurient interest in his young female victim, and that he appeared to be somewhat unsure of his next move, do not create a scintilla of ambiguity regarding his intention to steal a car by means of kidnapping the driver. Defendant was in effect lying in wait at the stop light until a potential victim came along. His apparent sexual interest in B. does not negate the fact that defendant committed a carjacking and chose as his carjacking victim a person who was less likely to be able to offer resistance and whom he could control within the car and ensure his escape. The trial court had no duty to give the additional lesser-included instruction when there was no

_____

that the defendant did not actually and reasonably believe that the other person consented. (CALCRIM No. 1204.)

evidence the offense was less than that charged. (*Breverman*, *supra*, 19 Cal.4th at p. 162; *People v. Pham* (1993) 15 Cal.App.4th 61, 68.)

In any event, it is not reasonably probable that a result more favorable to defendant would have resulted in the absence of the alleged error. (*Breverman*, *supra*, 19 Cal.4th at pp. 165, 178; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Even if the jury had been instructed on simple kidnapping, the only reasonable inference to be drawn from the evidence was that a completed carjacking took place, and defendant kidnapped B. in order to accomplish it. As stated in *Breverman*, the test of prejudice focuses on what the jury is *likely* to have done in the absence of the error, not on what a reasonable jury *could* do. (*Breverman*, at p. 177.) Defendant's jury was not likely to have found him not guilty of the offense in count 2 merely because he developed an interest in B. as well as in the car. The prosecutor told the jury members that if they found defendant did not intend to permanently or temporarily deprive B. of her car, they should find he committed false imprisonment, and the jury did not do so. Defendant's argument is without merit.

## III. Washington State Prior as a Strike Offense

### A. *Argument*

Defendant contends that, since the Washington theft statute does not include the element of intent to permanently deprive the victim of the property, the Washington statute is broader than the California theft statute. Therefore, under the least-adjudicated-elements test, a second degree robbery under the Washington statute is not equivalent to a second degree robbery under the California statute, and defendant did not suffer a prior strike. Moreover, the prosecution did not present substantial evidence that when defendant committed the robbery in Washington, he specifically intended to permanently deprive the victim of the keys he forcibly took from the victim.

### B. *Proceedings Below*

Defense counsel filed a motion to strike the allegation of a strike prior conviction, arguing that defendant's conviction did not qualify as a serious felony in California for the reasons stated *ante*. At the hearing on the motion, the People introduced a packet

from the Washington Department of Corrections, a certified copy of the amended information, and an additional packet containing a certified document with defendant's statement regarding the facts of his crime. The documents were received as evidence over the defense objection. The prosecutor stated that both the California and Washington statutes involve nonstatutory elements—elements not contained in the actual code sections—that are nevertheless contained in the jury instructions for those crimes. The statutes themselves are virtually identical. Moreover, the court could look at the entire record of conviction, and defendant's statement is that he went up to a person, hit him in the face, and took his car keys. It defied logic to say that defendant would punch the person, take the keys, and then give them back. The circumstances of the crime combined with the statutory requirements clearly met with the requirements in California. The defense argued that the circumstances of the crime did not aid the prosecution, since theft of the keys could lead to "a situation . . . like joyriding which does not require the permanent deprivation of property."

The court denied the defense motion, stating it had reviewed the submissions and heard the arguments, and "when taking it all together, both the law and, in particular, the facts that were set forth in the plea that was made by the defendant in the referenced case . . . [t]he court agrees with the People on balance that taken together, all of that, that it would be this Court's opinion that the Washington law was sufficiently similar to constitute a prior for purposes of this matter."

### C. Relevant Authority

Section 667, subdivision (a)(1) provides for a five-year enhancement to the sentence of "any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony" Section 667, subdivision (d), which defines serious and/or violent felonies for purposes of the Three Strikes law, provides in subsection (d)(2) that "[a] prior conviction in another jurisdiction for an offense that, if committed in California, is punishable by imprisonment in the state prison shall constitute a prior conviction of a particular serious and/or violent felony if the prior

10

conviction in the other jurisdiction is for an offense that includes all of the elements of a particular violent felony as defined in subdivision (c) of Section 667.5 or serious felony as defined in subdivision (c) of Section 1192.7."

"The People must prove all elements of an alleged sentence enhancement beyond a reasonable doubt. [Citation.]" (*People v. Miles* (2008) 43 Cal.4th 1074, 1082.) "To qualify as a serious felony, a conviction from another jurisdiction must involve conduct that would qualify as a serious felony in California." (*People v. Avery* (2002) 27 Cal.4th 49, 53 (*Avery*).)

### D. Prior Conviction Enhancement Must Be Reversed

Robbery is a strike offense under California law. (§1192.7, subd. (c)(19).) On July 29, 2010, defendant pleaded guilty to second degree robbery in violation of Washington statutes 9A.56.210 and 9A.56.190. Former section 9A.56.190 of the Revised Code of Washington provided: "A person commits robbery when he unlawfully *takes personal property from the person of another or in his presence against his will* by the *use or threatened use of immediate force*, violence, *or fear* of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear." (1975 1st Ex. Sess. ch. 260, § 9A.56.190.)[4] At the time of defendant's prior conviction, the Supreme Court of Washington had interpreted a 1975 revision to its state criminal code as deleting the common law requirement of intent to "permanently deprive" from its theft offenses. (*State v. Komok* (Wash. 1989) 783 P.2d 1061, 1063-1064.)

---

[4]     At the time of defendant's conviction and currently, section 9A.56.210 provides merely that a person is guilty of robbery in the second degree if the person commits robbery, and robbery in the second degree is a class B felony. (Rev. Code Wash., § 9A.56.210.)

The California robbery statute reads:  "Robbery is the *felonious taking of personal property in the possession of another, from his person or immediate presence*, and *against his will*, accomplished *by means of force or fear*."  (§ 211, italics added.)  Thus, as the prosecutor below argued, the statutes are virtually identical, except for the added language in the Washington statute regarding a taking without the victim's knowledge.  Nevertheless, in California, the intent element necessary to establish the crime of theft is generally described as the specific "intent to *permanently* deprive the owner of possession of the property." (*Avery*, *supra*, 27 Cal.4th at p. 54; *People v. Guerra* (1985) 40 Cal. 3d 377, 385; *People v. Ortega* (1998) 19 Cal.4th 686, 693.)  In *Avery*, while examining the intent requirement in section 484 (defining theft), our state Supreme Court noted that California's theft statute "does not itself expressly require an intent to permanently deprive.  Rather, it merely says that, to be guilty of theft, the person must 'feloniously steal' the property; it does not further define the intent requirement." (*Avery*, *supra*, 27 Cal.4th at p. 55.)  *Avery* explained that, although the statute is silent on intent, "the 'statute is declaratory of the common law' and so includes the common law intent requirement" (*ibid.*, quoting *People v. Davis* (1998) 19 Cal.4th 301, 304, fn.1), which, as noted, is generally described as "the intent to *permanently* deprive the owner of possession of the property" (*Avery*, at p. 54).

*People v. McGee* (2006) 38 Cal.4th 682, 706 (*McGee*) established a procedure for determining whether an out-of-state prior conviction qualifies as a strike offense in California.  Under *McGee*, when the definition of robbery under California and a different state's law differs, "the enumeration of the elements of the offense does not resolve the issue."  Therefore, a reviewing court is required to "examine the record of the prior proceeding to determine whether that record is sufficient to demonstrate that *the conviction* is of the type that subjects the defendant to increased punishment under California law." (*Ibid.*; see also *People v. Woodell* (1998) 17 Cal.4th 448, 452-461.)  This inquiry was to be narrowly limited "'only to those record documents reliably reflecting the facts of the offense for which the defendant was convicted.'" (*People v. Trujillo* (2006) 40 Cal.4th 165, 177; *People v. Reed* (1996) 13 Cal.4th 217, 223.)  The

12

court could not make an independent determination regarding a disputed issue of fact relating to the defendant's prior conduct (see *Woodell*, at p. 460), but rather was obliged to examine the record of the prior proceeding to determine whether that record was sufficient to demonstrate that the conviction was of the type that would subject the defendant to increased punishment under California law. (*McGee*, at p. 706.)

In the instant case, the certified records from Washington show that defendant was convicted of second degree robbery. The charging document states that the defendant, Alexis Fantauzzi, "did unlawfully and with intent to commit theft take the personal property of another, to wit: car keys, from the person and in the presence of Caleb Woods, against his will by the use or threatened use of immediate force, violence and fear of injury to such person." Defendant's handwritten statement on plea of guilty states: "On or about March 31, 2010, in King County, WA, I unlawfully and with intent to commit theft, took personal property, to wit: keys, from the person of and in the presence of Caleb Woods, by use of force or by threatened use of immediate force, violence or fear of injury. I hit him." The certificate of probable cause, contained within the plea agreement, stated that defendant confronted the victim and demanded his car keys when the victim got out of his car. When the victim refused, defendant punched him at least three times in the face and head and then fled on foot. After a search of the area, police spotted defendant and detained him. Defendant, later identified by the victim, said he was looking for a car to steal so that he could run over the people who raped his wife.

Defendant observes that the Washington statute does not contain the intent to permanently deprive, and he argues that the trial court in his case erred in looking beyond the statute in making its determination that his Washington robbery conviction was a strike offense. He asserts that evolving jurisprudence from the United States Supreme Court likely precludes any factfinding beyond the statutory elements of a prior conviction. In this vein, he cites *Shepard v. United States* (2005) 544 U.S. 13 (*Shepard*) and *Descamps v. United States* (2013) ___ U.S. ___ [133 S.Ct. 2276] (*Descamps*). Both cases interpreted the boundaries of permissible inquiries into a defendant's prior

convictions for purposes of enhancing sentences under the Armed Career Criminal Act (ACCA). (*Shepard*, at pp. 15-16; *Descamps*, at p. 2281.)

According to *Descamps*, *Taylor v. United States* (1990) 495 U.S. 575 (*Taylor*) "established the rule for determining when a defendant's prior conviction counts as one of ACCA's enumerated predicate offenses . . . ." (*Descamps*, *supra*, 133 S.Ct. at p. 2283.) Under *Taylor*, a sentencing court could look only to the statutory definitions, or the elements, of a defendant's prior crimes, and not to the facts underlying the convictions to determine whether the crime committed was the equivalent of the "generic"ACCA offense. (*Descamps*, at p. 2283.) As *Shepard* noted, *Taylor* held that a court sentencing under the ACCA could also look to the charging documents and jury instructions to determine whether a prior conviction after a jury trial was for generic burglary. (*Shepard*, *supra*, 544 U.S. at p. 16.)

The question in *Shepard* was whether, in following the "categorical" approach imposed by the ACCA, a sentencing court could look at police reports or complaints to determine if an earlier conviction by guilty plea necessarily admitted a conviction for generic burglary. (*Shepard*, *supra*, 544 U.S. at pp. 16, 19.) *Shepard* held that, under the *Taylor* rule, these documents could not be consulted. (*Shepard*, at p. 16.) The *Shepard* court went on to approve a sentencing court's use of a restricted range of documents when making such a determination: "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or some comparable judicial record of this information." (*Id*. at p. 26.)

Subsequently, in *Descamps*, the court reiterated that, under the "'categorical approach,'" a past conviction can be enhanced only if the elements of the prior conviction are the same or narrower than those of the generic offense. (*Descamps*, *supra*, 133 S.Ct. at p. 2281.) *Descamps* stated that the court had previously approved a variant of that method, the "modified categorical approach," which could be used only when the conviction was for a violation of a divisible statute, i.e., a statute that sets out one or more elements in the alternative. In these latter cases, a sentencing court may consult a limited

14

class of documents, such as indictments and jury instructions, to determine which alternative was violated by the defendant and then compare the elements of the actual offense committed with those of the generic crime. (*Id.* at pp. 2281, 2283.) *Descamps* noted that the modified categorical approach was properly applied in *Shepard*, *supra*, 544 U.S. 13, which involved a divisible Massachusetts burglary statute that covered entries into boats and cars, as well as the "generic burglary" of entry into a building. (*Descamps*, at p. 2284; *Shepard*, at pp.16-17.)

In *Descamps*, the court reversed the Ninth Circuit, which had ruled that a court could look at underlying facts to determine whether a prior conviction qualified as an ACCA predicate even though the elements of a violation of a nondivisible statute (in that case, burglary) failed to satisfy the categorical test. (*Descamps*, *supra*, 133 S.Ct. at pp. 2281-2283.) *Descamps* held that, because the California burglary statute at issue was broader than the generic statute (it did not require the entry to have been unlawful), the defendant's prior conviction was not a predicate under ACCA. (*Descamps,* at pp. 2282-2283.) And because the statute contained a single indivisible set of elements, the court could not scrutinize documents, including the plea colloquy, to discover whether the element of unlawful entry could be found. (*Id*. at pp. 2285-2286.)

The *Descamps* court stated that a finding of a predicate offense would undeniably increase the maximum penalty and therefore raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction. (*Descamps*, *supra*, 133 S.Ct. at p. 2288.) *Descamps* criticized the Ninth Circuit for authorizing the court to attempt to discern what a trial showed or a plea proceeding revealed about the defendant's underlying conduct. (*Ibid*.) "The Sixth Amendment contemplates that a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt. And the only facts the court can be sure the jury so found are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances." (*Ibid*.)

The California Supreme Court has not spoken on the effect of the *Descamps* decision on *McGee*. In the California Courts of Appeal, *Descamps* has been seen as signaling the end of the type of factfinding approved by *McGee*. In *People v. Saez* (2015)

237 Cal.App.4th 1177 (*Saez*), the court considered "whether a strike determination that does not run afoul of *McGee* . . . may nevertheless violate the Sixth Amendment." (*Saez*, at pp. 1205-1206.) In *Saez*, the defendant had sustained a conviction by plea in Wisconsin, where he admitted to the elements of false imprisonment while armed and to the reckless use of a dangerous weapon in his guilty plea. He did not admit or waive his Sixth Amendment rights regarding other facts, such as whether he personally used a firearm. (*Saez*, at pp. 1190, 1206.) The *Saez* court agreed that the simple fact of the defendant's convictions of the Wisconsin statutes did not establish that his offense was a serious felony under section 1192.7, subdivision (c). (*Id*. at pp. 1194-1195.) The only way to determine whether the offense the defendant committed included all the elements of a serious felony in California was to look to the record of the prior conviction. (*Id*. at p. 1195.) *Saez* concluded that the trial court's reliance on the Wisconsin record of conviction in order to declare the offense a strike was in accord with *McGee*, but violated the Sixth Amendment under *Descamps*. (*Saez*, at pp. 1195, 1198.) The court reversed the strike determination. (*Id*. at pp. 1198, 1209.)

A few months later, *People v. Marin* (2015) 240 Cal.App.4th 1344 (*Marin*) reached the same conclusion. The *Marin* court concluded (and the respondent conceded) that the evidence was insufficient to prove that Marin's prior vehicular manslaughter conviction was a strike. Neither the elements of the offense nor the evidence presented by the prosecution, showed that he personally inflicted great bodily injury "on any person, other than an accomplice," as required under section 1192.7, subdivision (c)(8). (*Id*. at pp. 1348, 1350.) The court held that under *Descamps*, the judicial factfinding authorized by *McGee* violates the Sixth Amendment right to a jury trial. That right is not violated, however, when the factfinding is limited to the documents approved in *Taylor* and *Shepard*, i.e., indictment, jury instructions, plea colloquy, and plea agreement. (*Marin*, at pp. 1348-1349, 1363.) *Marin* further concluded that under *Descamps*, the Sixth Amendment does not prohibit judicial factfinding beyond the statutory elements of the prior conviction if, in entering a guilty plea to the prior offense, the defendant waived his right to a jury trial with respect to such facts and either admitted the facts, or the court

16

found them true with defendant's assent. (*Marin*, at p. 1349.) The court reversed the true finding on the strike allegation and remanded the matter to the trial court for further proceedings. (*Id*. at p. 1366.) According to the *Marin* court's understanding of *Descamps*, the prosecution should be given an opportunity to prove the relevant facts by resorting to documents in the record of conviction, and the defendant was entitled to a jury trial on the issue of whether he personally inflicted great bodily injury, unless he waived his right to a jury trial.

"The specific intent with which an act is performed is a question of fact." (*In re Albert A*. (1996) 47 Cal.App.4th 1004, 1008.) In the instant case, under the reasoning of *Saez* and *Marin*, the sentencing court in defendant's case violated his Sixth Amendment rights by finding his Washington conviction to be a strike. The Washington robbery statute is broader than the elements of robbery in California, which include the intent to permanently deprive the owner of the property. Thus, the simple fact of defendant's prior Washington conviction did not establish that the offense was a serious felony under section 1192.7, subdivision (c). In addition, assuming the trial court properly considered the documentation related to defendant's guilty plea, which consisted of documents approved in *Taylor* and *Shepard*, the intent element was not clearly established. Therefore, we must reverse the true finding on the prior conviction allegation and modify defendant's sentence accordingly.

## IV. Section 654 and Count 4

### A. Argument

Defendant contends that under section 654 the trial court should have stayed his sentence for the misdemeanor escape in count 4. The attempted escape in count 4 and the vandalism in count 5 were incident to a single course of criminal conduct and shared the single intent of escaping from custody.

### B. Relevant Authority

Section 654 provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that

17

provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

Section 654 precludes double punishment not only for a single act, but also for an indivisible course of conduct motivated by a single intent or objective. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1207-1209.) When section 654 applies, the proper procedure is to stay imposition of sentence on one of the crimes, with the stay to become permanent on completion of the term imposed on the other. (*People v. Pearson* (1986) 42 Cal.3d 351, 360.) The determination of whether the facts reveal a single intent and objective is generally a factual matter, whereas the application of section 654 to the facts is a question of law. (*People v. Perez* (1979) 23 Cal.3d 545, 552, fn. 5.) If the court makes no express finding on the issue, a finding that the crimes were divisible "inheres in the judgment" and must be upheld if supported by substantial evidence. (*People v. Nelson* (1989) 211 Cal.App.3d 634, 638.)

### C. No Violation of Section 654

We disagree with defendant's claim that his two acts of kicking out patrol car windows were part of a single course of conduct, even if his goal was to escape both times. Defendant's course of conduct was not indivisible.

The entire circumstances must be considered in determining whether the course of conduct is divisible and whether the crimes were committed with different intents. (See, e.g., *People v. Hooker* (1967) 254 Cal.App.2d 878, 880-881.) Therefore, although the nature of the offenses is relevant, it is not determinative. B.'s ordeal ended at approximately 10:00 a.m., and defendant was shortly thereafter transported in the first police car. The second trip did not occur until approximately 12 hours later. Defendant clearly committed two different crimes at two different locations, and each crime was complete within itself.

Defendant's second act of smashing the window was more violent, and his intent was clearly to escape. It also involved different risks. (*People. v. Kwok* (1998) 63 Cal.App.4th 1236, 1256 [when each entry of burglar into a residence creates a separate and distinct risk of violent confrontation, they are separately punishable].) The first time

18

defendant smashed the patrol car window, he was already inside the parking lot of the police station. The second time, the police were obliged to cross from one side to the other of a busy freeway while one officer held onto defendant's handcuffs after defendant hurled himself headfirst through the broken window. This seriously endangered defendant, other drivers, and the police officers. Moreover, as in *Kwok*, defendant's two acts of destroying police car windows were separated by a long period of time during which he had the opportunity to reflect. (*Id.* at pp. 1256-1257; *People v. Gaio* (2000) 81 Cal.App.4th 919, 935-936.) Defendant was properly sentenced in counts 4 and 5.

## DISPOSITION

The enhancements for the prior strike conviction from the state of Washington are reversed, and the judgment is modified to vacate defendant's conviction in count 1 for simple kidnapping. The judgment is modified to reflect that defendant's minimum parole eligibility is seven years, the six-year sentence in count 5 is reduced to three years, and the five-year enhancement under section 667, subdivision (a)(1) is stricken, for a total determinate sentence of five years with consecutive life term. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.

19